1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT FOR THE

6                    EASTERN DISTRICT OF CALIFORNIA

7

8    V. STEVEN BOOTH AND LOUISE Q.              CIV F-07-0609 AWI GSA
     BOOTH,                            )
9                                      )        ORDER RE: MOTION TO DISMISS
                    Plaintiffs,        )        OR IN THE ALTERNATIVE FOR
10                                     )        SUMMARY JUDGMENT
             v.                        )
11                                     )
     KENT R. SPJUTE, JEAN NOLE, JEFF   )
12   HODGES, BRIAN APPLEGATE,          )
     MICHELLE M. CASAREZ, UNKNOWN)
13   DOES 1-20, AND THE UNITED STATES)
     OF AMERICA,                       )
14                                     )
                    Defendants.        )
15   _____ )

16

17                              **I. History**[1]

18          Plaintiffs Steven and Louise Booth live at 5717 Roundup Way in Bakersfield, CA.

19   Steven Booth has an office at 1927 21st St. in Bakersfield, CA.  Plaintiffs are involved in tax

20   disputes with Defendant United States.  Defendants Kent Spjute, Jean Nole, Jeff Hodges, Brian

21   Applegate, and Michelle Casarez are Internal Revenue Service agents ("Federal Agents").  Based

22   on the affidavit of Kent Spjute, the United States was able to obtain search warrants for the

23   Plaintiffs' home and office.  The searches were carried out by Federal Agents on March 14, 2006.

24          Plaintiffs filed suit on April 20, 2007. Doc. 1.  In their complaint, they allege violations of

25   their First, Fourth, and Fifth Amendment rights against all Defendants.  Plaintiffs allege the

26   _____

27          [1]The factual history is provided for background only and does not form the basis of the
     court's decision; the assertions contained therein are not necessarily taken as adjudged to be true.
28   The legally relevant facts relied upon by the court are discussed within the analysis.

1    Federal Agents were under the supervision of unknown Defendant Does who failed to adequately

2    instruct, control, and/or discipline Federal Agents for their conduct.  They also allege the United

3    States disclosed tax information about the Plaintiffs to third parties in violation of 26 U.S.C.

4    §6103.  Appended to the complaint are copies of the warrants in question.

5          The matter is now before the court on Defendants' motion to dismiss the complaint for

6    lack of jurisdiction, failure to state a claim, and qualified immunity.  Doc. 21, Part 1.  Defendants

7    have submitted a statement of undisputed material facts and declarations, asking in the

8    alternative for the motion to be converted to one for summary judgment.  Plaintiffs oppose the

9    motion. Doc. 28.  Plaintiffs have not submitted any supplemental material to be considered.  The

10   matter was taken under submission without oral argument. Doc. 31.

11

12                              **II. Legal Standards**

13         Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the

14   plaintiff's "failure to state a claim upon which relief can be granted."  A dismissal under Rule

15   12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient

16   facts alleged under a cognizable legal theory. <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir.

17   2001).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

18   factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

19   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

20   of action will not do. Factual allegations must be enough to raise a right to relief above the

21   speculative level, on the assumption that all the allegations in the complaint are true (even if

22   doubtful in fact)." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007), citations

23   omitted.  The court is not required "to accept as true allegations that are merely conclusory,

24   unwarranted deductions of fact, or unreasonable inferences." <u>Sprewell v. Golden State Warriors</u>,

25   266 F.3d 979, 988 (9th Cir. 2001).  The court must also assume that "general allegations embrace

26   those specific facts that are necessary to support the claim." <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497

27

28                                        2

1  U.S. 871, 889 (1990), citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), overruled on other

2  grounds at 127 S. Ct. 1955, 1969.  Thus, the determinative question is whether there is any set of

3  "facts that could be proved consistent with the allegations of the complaint" that would entitle

4  plaintiff to some relief. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002).  At the other

5  bound, courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or

6  that the defendants have violated...laws in ways that have not been alleged." <u>Associated General</u>

7  <u>Contractors of California, Inc. v. California State Council of Carpenters</u>, 459 U.S. 519, 526

8  (1983).

9       In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited

10  to reviewing only the complaint.  "There are, however, two exceptions....First, a court may

11  consider material which is properly submitted as part of the complaint on a motion to dismiss...If

12  the documents are not physically attached to the complaint, they may be considered if the

13  documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them.

14  Second, under Fed. R. Evid. 201, a court may take judicial notice of matters of public record."

15  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001), citations omitted.  The Ninth

16  Circuit later gave a separate definition of "the 'incorporation by reference' doctrine, which

17  permits us to take into account documents whose contents are alleged in a complaint and whose

18  authenticity no party questions, but which are not physically attached to the plaintiff's pleading."

19  <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005), citations omitted.  "[A] court may not

20  look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition

21  to a defendant's motion to dismiss. Facts raised for the first time in opposition papers should be

22  considered by the court in determining whether to grant leave to amend or to dismiss the

23  complaint with or without prejudice." <u>Broam v. Bogan</u>, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003),

24  citations omitted.

25       If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without

26  prejudice, and with or without leave to amend.  "[A] district court should grant leave to amend

27

28                          3

1   even if no request to amend the pleading was made, unless it determines that the pleading could

2   not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th

3   Cir. 2000) (en banc), quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).  In other

4   words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX,

5   Inc., 298 F.3d 893, 898 (9th Cir. 2002).

6

7                                    **III. Discussion**

8          A motion to dismiss may be converted to one for summary judgment when "a party has

9   notice that the district court may look beyond the pleadings." Hamilton Materials Inc. v. Dow

10  Chem. Corp., 494 F.3d 1203, 1207 (9th Cir. 2007), citations omitted.  The court declines to

11  convert the motion into one for summary judgment and so does not consider the declarations and

12  statement of material facts submitted as part of this motion.

13

14  **A. Subject Matter Jurisdiction**

15         Plaintiffs seek "An injunction against the defendant's continued possession of the

16  equipment, property, and records seized, especially First Amendment protected materials, and an

17  order directing them to be returned to plaintiffs." Doc. 1, Complaint, at 4:27-5:1.  Defendants

18  argue that this request articulates a Bivens claim against Defendant United States.  The United

19  States has not waived sovereign immunity for Bivens causes of actions; no such claim may be

20  pursued. Cato v. United States, 70 F.3d 1103, 1110 (9th Cir. 1995).  Suits against individuals in

21  their official capacity must be construed as suits against the government entity itself. Kentucky v.

22  Graham, 473 U.S. 159, 165-66 (1985).  Plaintiffs argue that "there is nothing in the complaint

23  which indicates the individual defendants do not still have the seized property in their possession,

24  [therefore] they would be proper parties to the instant action for the injunction." Doc. 28,

25  Plaintiffs' Opposition, at 9:24-10:2.  To the extent that Plaintiffs seek to recover possession of

26  the contested items under Bivens, the claim is limited and must be construed as requesting that

27

28                                         4

form of relief against the Federal Agents in their individual capacity.

**B. Fourth Amendment Standing**

Defendants challenge Plaintiffs' ability to assert Fourth Amendment rights in the search of Plaintiffs' office as "they have not made any allegations to establish that they had a reasonable expectation of privacy at the Wellness Corporation." Doc. 21, Part 2, Defendants' Brief, at 6:16. "[C]apacity to claim the protection of the [Fourth] Amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion...It has long been settled that one has standing to object to a search of his office, as well as of his home." Mancusi v. DeForte, 392 U.S. 364, 368 (1968), citations omitted.  Plaintiffs specifically allege Defendants "appeared at plaintiffs' place of business to execute an alleged search warrant." Doc. 1, Complaint, at 2:13. The attached search warrant states "This location is the business offices of San Joaquin Wellness & Medical Group Inc. operated by Vincent Steven Booth....It is described as a single story office building." Doc. 1, Complaint, at 9.  Plaintiffs have sufficiently alleged an expectation of privacy in regards to that location.  Defendants cite to a Ninth Circuit case asserting that the right to privacy in the workplace is extremely limited. Doc. 21, Part 2, Defendants' Brief, at 7:12-16. However, the case is inapposite as it dealt with the "reasonableness of a government employee's expectation of privacy in his [government] workplace." Schowengerdt v. General Dynamics Corp., 823 F.2d 1328, 1333 (9th Cir. 1987).

**C. First Cause of Action- Fourth Amendment Specificity Requirement**

The Fourth Amendment of the U.S. Constitution states that warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized."  "In order for a search to be reasonable, the warrant must be specific. Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought.

Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." In re Grand Jury Subpoenas, 926 F.2d 847, 856-57 (9th Cir. 1991), citations omitted.  The two concepts, while closely related, are distinct.  Unfortunately, courts are not always careful with these terms and have often conflated the two concepts.  "[T]he specificity required in a warrant varies depending on the circumstances of the case and the types of items involved. Warrants which described generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible. In determining whether a description is sufficiently precise, we have concentrated on one or more of the following: (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officer can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued." United States v. Spilotro, 800 F.2d 959, 963 (9th Cir. 1986), citations omitted.  "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." Massachusetts v. Sheppard, 468 U.S. 981, 988 n.5 (1984), citations omitted.

Plaintiffs allege that the search warrants are insufficiently particular due to a combination of the following factors: (1) the failure of the warrants to cite any violation of federal law, (2) the lack of affidavits accompanying the execution of the warrants, and (3) the wide scope of items to be seized. See Doc. 1, Complaint, at 2:16-23.  Plaintiffs also claim "the warrants were overbroad." Doc. 1, Complaint, at 2:22.  Defendants argue that the warrants are sufficiently specific on their face, or in the alternative, that qualified immunity applies. Doc. 21, Part 2, Defendants' Brief, at 7:21-9:21 and 18:11-20:20.

At this motion to dismiss stage, the court evaluates the claim solely based on the complaint, appended material, and judicially noticeable facts.  Notably lacking from the record thus far are the probable cause affidavits supporting the warrants.  When evaluating whether the

6

1   specificity requirement is met, context is important.  Past precedent "requir[es] courts to consider

2   the totality of circumstances in determining the validity of a warrant. One of the crucial factors to

3   be considered is the information available to the government. '(Generic) classifications in a

4   warrant are acceptable only when a more precise description is not possible.'" United States v.

5   Cardwell, 680 F.2d 75, 78 (9th Cir. 1982), quoting United States v. Bright, 630 F.2d 804, 812

6   (5th Cir. 1980).  The warrants authorizes seizures of large categories of records.  Plaintiffs have

7   clearly stated both particularity and breadth claims.  As key facts are currently unknown, the

8   court can not make a qualified immunity determination at this time.

9

10  **D. Second Cause of Action- Fifth Amendment**

11          Plaintiffs allege that they were deprived of "property in violation of their right to due

12  process." Doc. 1, Complaint, at 3:4-5.  They specified that they "are complaining about the

13  deprivation of their property without due process of law (i.e. a pre-deprivation or post-

14  deprivation hearing)." Doc. 28, Plaintiffs' Opposition, at 7:6-8.  Defendants argue the Fifth

15  Amendment claim is purely duplicative of the Fourth Amendment claim.  Plaintiffs correctly

16  point out that "Certain wrongs affect more than a single right and, accordingly, can implicate

17  more than one of the Constitution's commands. Where such multiple violations are alleged, we

18  are not in the habit of identifying as a preliminary matter the claim's 'dominant' character.

19  Rather, we examine each constitutional provision in turn." United States v. James Daniel Good

20  Real Prop., 510 U.S. 43, 50 (1993), quoting Soldal v. Cook County, 506 U.S. 56, 70 (1992).

21          However, the Fourth Amendment has been read as generally specifying the due process

22  afforded in criminal investigations. See Gerstein v. Pugh, 420 U.S. 103, 125 n.27 (1975) ("The

23  Fourth Amendment was tailored explicitly for the criminal justice system, and its balance

24  between individual and public interests always has been thought to define the 'process that is

25  due' for seizures of person or property in criminal cases").  This overall dovetailing of Fourth

26  and Fifth Amendment concerns applies where materials are seized and held as evidence rather

27

28                                                    7

1   than forfeited. Cf. <u>United States v. James Daniel Good Real Prop.</u>, 510 U.S. 43, 51-52 (1993) ("It

2   is true, of course, that the Fourth Amendment applies to searches and seizures in the civil context

3   and may serve to resolve the legality of these governmental actions without reference to other

4   constitutional provisions. But the purpose and effect of the Government's action in the present

5   case go beyond the traditional meaning of search or seizure. Here the Government seized

6   property not to preserve evidence of wrongdoing, but to assert ownership and control over the

7   property itself. Our cases establish that government action of this consequence must comply with

8   the Due Process Clauses of the Fifth and Fourteenth Amendments"), citations omitted.  The U.S.

9   Supreme Court has said, "when law enforcement agents seize property pursuant to warrant, due

10  process requires them to take reasonable steps to give notice that the property has been taken so

11  the owner can pursue available remedies for its return." <u>City of W. Covina v. Perkins</u>, 525 U.S.

12  234, 240 (1999).  Aside from the requirement of notice, no due process rights independent of

13  Fourth Amendment protections appear to have been specifically articulated by the courts.

14  Plaintiffs do not allege any lack of notice or that the property seized was subject to forfeiture.  As

15  the search and seizure was undertaken pursuant to a criminal investigation,[2] Fifth Amendment

16  due process evaluation in this case folds into the Fourth Amendment evaluation. See <u>Sanders v.</u>

17  <u>City of San Diego</u>, 93 F.3d 1423, 1429 (9th Cir. 1996) ("when seizing property for criminal

18  investigatory purposes, compliance with the Fourth Amendment satisfies pre-deprivation

19  procedural due process as well"); <u>Wilkinson v. Hallsten</u>, 2006 U.S. Dist. LEXIS 53822, 22-23

20  (W.D.N.C. 2006) ("The Fourth Amendment is the Plaintiffs' shield from violations of due

21  process in the setting of a criminal seizure. As discussed above, no Fourth Amendment violations

22

23

24      [2]Plaintiffs object that "Since there are no allegations in the complaint (or even in the
        search warrants themselves), about any 'criminal investigation,' any argument about such
        investigation is beyond the permissible bounds of a facial attack on the complaint under Rule

25      12(b)(6)." Doc. 28, Plaintiffs' Opposition, at 8:7-10.  While Plaintiffs do not state they are the
        target of a criminal tax investigation, review of the complaint and appended material leaves no

26      other reasonable inference possible.  The Federal Agents are all IRS officers. Doc. 1, Complaint,
        at 4:16.  The search warrants were issued to "Kent R. Spjute, Special Agent, Internal Revenue

27      Service, Criminal Investigation Division." Doc. 1, Complaint, Exhibits A and B.

28                                                    8

occurred in the issuance or execution of this warrant for search and seizure, and as such no Fifth Amendment due process violations may be asserted").

**E. Third Cause of Action- First Amendment**

Plaintiffs' First Amendment claim against the Federal Agents is based on the allegation that "Many of the documents seized were related to plaintiffs' exercise of their right of association with others, free speech, and free press rights." Doc. 1, Complaint, at 3:11-12. To the extent this cause of action is not duplicative of the Fourth Amendment claim, Plaintiffs appear to be alleging that the Federal Agents targeted them with a tax investigation as a form of retaliation and to chill their exercise of First Amendment rights. As a general matter, to demonstrate a First Amendment violation, Plaintiffs must show that Defendants attempted to deter or chill Plaintiffs' speech and such deterrence was a substantial or motivating factor in Defendants' conduct. Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999), citations omitted.

"In Bivens, the United States Supreme Court held that, in appropriate cases, government officials may be held personally liable for violations, committed under the color of government authority, of citizens' constitutional rights. Bivens gives an individual a federal common law basis to sue federal government actors if they violate the individual's constitutional rights. However, our precedent makes clear that the right to sue as established by Bivens is qualified and is not absolute....Because the Internal Revenue Code gives taxpayers meaningful protections against government transgressions in tax assessment and collection, we hold that Bivens relief is unavailable for plaintiffs' suit against IRS auditors and officials." Adams v. Johnson, 355 F.3d 1179, 1183-86 (9th Cir. 2004). The immunity from suit under Bivens as outlined in Adams does not cover all situations. See Tekle v. United States, 457 F.3d 1088, 1094-1100 (9th Cir. 2006) (discussing excessive force and unreasonable detention claims under Bivens against IRS special agents). The Ninth Circuit has not made a categorical statement as to whether a Bivens action

1   for First Amendment violations may lie against IRS officers. Cf. W. Ctr. for Journalism v.

2   Cederquist, 235 F.3d 1153, 1156 (9th Cir. 2000) (reserving question of Bivens claim for

3   retaliatory audit).  Other circuits that have concluded that, "Bivens relief is not available to

4   taxpayers who allege First Amendment violations based on retaliatory tax audits." Hudson Valley

5   Black Press v. IRS, 409 F.3d 106, 113 (2nd Cir. 2005); see also Judicial Watch v. Rossotti, 317

6   F.3d 401, 402 (4th Cir. 2003).  The situation at hand goes beyond tax auditing to the execution of

7   a search warrant.

8        Defendants claim "Criminal investigations are, of course, typically the precursor to and

9   culminate in the assessment and collection of federal taxes." Doc. 21, Part 2, Defendants' Brief,

10  at 11 n.11.  However, the Tenth Circuit case Defendants cite for that proposition discusses

11  criminal investigations in a different context: "The [Anti-Injunction Act] applies not only to the

12  actual assessment or collection of a tax, but is equally applicable to activities leading up to, and

13  culminating in, such assessment and collection." Lowrie v. United States, 824 F.2d 827, 830

14  (10th Cir. 1987).  Defendants further cite to the Seventh Circuit for the prospect that there is "no

15  Bivens action against IRS agents who allegedly 'harassed' plaintiff. Doc. 30, Defendants' Reply,

16  at 4:17-18.  The opinion actually reads:

17          If in the course of enforcing the tax laws internal revenue agents ransack people's homes
            without a warrant, or otherwise violate the Fourth Amendment, the argument for a
18          damage remedy against the agents is a powerful one, since a suit for a tax refund would
            not be an adequate substitute. The argument is weaker if the claim is that the agents
19          refused to grant a charitable exemption to a religious organization in violation of the First
            Amendment or deprived the taxpayer of some administrative procedure due him under
20          the due process clause of the Fifth Amendment, for in both of these cases the wrong to
            the taxpayer can easily be set right through the legal procedures created by the tax code
21          itself. But the argument becomes completely untenable when as in this case the only
            claim is that the agents made mistakes, subjected the taxpayer to unnecessary
22          inconvenience, failed to explore possibilities for settlement, or otherwise failed to come
            up to the highest standards of conduct for government officers dealing with
23          citizens....Maybe if the complaint 'sketches a portrait of a lawless and arbitrary vendetta
            fueled by the power of the state, designed to harass by unwarranted intrusion into the
24          minutia[e] of their financial affairs, and intended to abuse by the creation of palpably
            unfounded claims against their property which they can set to right only by unnecessary
25          litigation,' Rutherford v. United States, [702 f.2d 580, 584 (5th Cir. 1983)], the taxpayer
            can resist a motion to dismiss; but that is not the portrait sketched by the present
26          complaint. Even when liberally construed, this complaint, if true, shows only that internal
            revenue agents acted in a heavy-handed, insensitive, and careless fashion in processing

27

28                                                    10

the taxpayer's tax returns. For such conduct there is no damage remedy.

      Even assuming with the Fifth Circuit in <u>Rutherford</u> that a deliberate campaign to harass a taxpayer could deprive him of his liberty without due process of law, more must be shown than a lack of courtesy, accuracy, and restraint by internal revenue agents in the processing of tax returns. Not every interference with peace of mind is a deprivation of liberty within the meaning of the Constitution. Even a battery by a police officer is not a deprivation of liberty unless circumstances of aggravation are present.

<u>Cameron v. IRS</u>, 773 F.2d 126, 128-29 (7th Cir. 1985).  The process of investigation is not necessarily equivalent to the process of tax assessment and collection.  The Seventh Circuit opinion lays out a continuum of activity without specifying what cutoff point forms the boundary between non-actionable behavior and activity which could rise to a First Amendment claim.

      The court finds that the activities Federal Agents are accused to have undertaken are comparable to the ones described in <u>Fry v. Melaragno</u>, 939 F.2d 832 (9th Cir. 1991).  In that case, the Ninth Circuit, in analyzing qualified immunity, found no First Amendment violation for a number of actions taken by an IRS agent in the course of investigation.

      The complaint describes Melaragno as 'a revenue agent for the I.R.S. who spent many years investigating the tax planning and First Amendment-protected activities of Fry.' Specifically, Fry complains that Melaragno conspired with others to charge him with false criminal charges; that with two other defendants he inserted into the prosecutor's version of the presentence report details about his first amendment activities which encouraged parole commission employees to retaliate against Fry and keep him in prison twice as long as the prosecutor had promised; intentionally lied and made misrepresentations to the probation officer preparing his presentence report; and helped the attorneys and investigators gather evidence for the tax litigation which included the book on sex.
....
[aside from the bringing of criminal charges which were not under Melaragno's control] Fry's other allegations against Melaragno do not survive the requirement that the pleadings reveal a violation of clearly established law. We cannot imagine how the alleged wrongful acts, such as gathering evidence for the tax court trial and communicating details of his investigation to persons involved in Fry's sentencing, infringed clearly established rights under the first amendment. Nor do they suggest that Melaragno acted in a way which he should have known was clearly unlawful. Melaragno is entitled to qualified immunity from suit.

<u>Fry v. Melaragno</u>, 939 F.2d 832, 838-39 (9th Cir. 1991).  The Federal Agents did not violate Plaintiffs' First Amendment rights by executing of a search warrant as part of a tax investigation. Alternatively, Federal Agents should be entitled to qualified immunity based on the <u>Fry</u> opinion as the law is unclear.

11

**F. Fifth Cause of Action- Section 6103**

"If any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States." 26 U.S.C. §7431(a)(1). The term "return information" is defined as "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing..." 26 U.S.C. §6103(b)(2)(A). Against the United States only, Plaintiffs allege "Within the last 2 years, agents of defendant United States disclosed tax information about plaintiffs multiple times to third-parties without plaintiffs' consent and when no statutory exception allowed for any such disclosures. The above disclosures included accusations of tax evasions against plaintiffs to third-parties by some of the individual defendants herein, as well as other IRS agents. These disclosures were made in violation of 26 U.S.C. §6103, and plaintiffs are entitled to damages under 26 U.S.C. §7431." Doc. 1, Complaint, at 4:12-18.

Defendants argue Plaintiffs fail to allege sufficient facts to state a claim: "The Booths' Complaint does not state what tax information was allegedly disclosed, when it was disclosed, and to whom it was impermissibly disclosed." Doc. 21 Part 2, Defendants' Brief, at 14:22-15:2. The only solid factual allegation is that the Federal Agents told unidentified third parties that Plaintiffs were being accused of tax evasion. "[T]o state a claim for unauthorized disclosure under 26 U.S.C. § 7431, Plaintiffs must allege '(1) that the disclosure [by IRS] was unauthorized; (2) that the disclosure was made knowingly or by reason of negligence; and (3) that the disclosure was in violation of section 6103.'" <u>Aloe Vera of Am., Inc. v. United States,</u> 128 F. Supp. 2d 1235, 1246 (D. Ariz. 2000), quoting <u>Weiner v. IRS</u>, 789 F. Supp. 655, 656 (S.D.N.Y. 1992). Plaintiffs simply assert this legal standard without providing any of the necessary factual

detail.  Such a statement is inadequate. See <u>Chapin v. Hutton</u>, 1999 U.S. Dist. LEXIS 10560, *24-25 (D. Idaho 1999) ("Plaintiffs have alleged that the Defendants have discussed Plaintiffs' tax liabilities and other confidential matters with unauthorized persons and that the disclosures are not within a statutory exception....Plaintiffs have not alleged sufficient facts to state a claim under Section 7431").


## IV. Order

Defendants' motion to dismiss for failure to state a claim is GRANTED in part and DENIED in part.  The second, third, and fifth causes of action are dismissed without prejudice. Any amended complaint must be filed within twenty (20) days of the date this order is filed.  If no amended complaint if filed by that date, Defendants are directed to file an answer to this first amended complaint as narrowed by this order within thirty (30) days of that date.


IT IS SO ORDERED.

**Dated:    September 23, 2008                        /s/ Anthony W. Ishii**
CHIEF UNITED STATES DISTRICT JUDGE

13